Eric D. Gere – 023226
egere@jsslaw.com
Garrett J. Olexa – 016685
golexa@jsslaw.com
Dina G. Aouad – 036249
daouad@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

*Attorneys for Kümpers Composites GmbH & Co.KG*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kümpers Composites GmbH & Co.KG, a foreign entity,<br><br>            Plaintiff,<br><br>vs.<br><br>TPI Composites, Inc., a Delaware corporation,<br><br>            Defendant. | No.<br><br>**COMPLAINT**<br><br>(Declaratory Judgment; Specific Performance; Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Promissory Estoppel)<br><br>(Jury Trial Demanded) |

Plaintiff Kümpers Composites GmbH & Co.KG ("Kümpers" or "Plaintiff"), by way of Complaint against Defendant, TPI Composites, Inc. ("TPI" or "Defendant"), hereby allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Kümpers is an international manufacturer of textile semi-finished products for structural applications in composites for the automotive, aerospace and wind industries.

2. Kümpers is formed and headquartered in Germany, and has conducted business with the Defendant TPI in Maricopa County, Arizona.

3. TPI is a manufacturer of composite wind blades for the wind energy market.

4. TPI is a Delaware corporation with its corporate headquarters in Scottsdale Arizona, Maricopa County. TPI also has facilities in Turkey.

5. Pertinent acts alleged herein occurred in Maricopa County, Arizona. Pursuant to the agreement between the parties, venue and jurisdiction is appropriate in a federal court located in Maricopa County, Arizona.

6. This Court has original jurisdiction of this case pursuant to 28 U.S.C. §1332 because the value of the claims exceeds $75,000 exclusive of interest and costs, and because this case involves citizens of different states.

7. Venue is proper in this district under 28 U.S.C. § 1391(b).

## **BACKGROUND**

8. Effective May 18, 2020, Kümpers and TPI entered a Mutual Non-Disclosure Agreement ("NDA").

9. On May 20, 2021, Kümpers and TPI entered a new Master Agreement ("Master Agreement") with a three-year term. [Master Agreement, Section AA]

10. Kümpers and TPI entered a supplier agreement effective January 1, 2022 ("Supplier Agreement") for Kümpers to sell and supply TPI with certain product and materials.

11. Section 3 of the Supplier Agreement provided a fixed term date ending March 31, 2023.

12. The Supplier Agreement required Kümpers to be ready and able to supply certain minimum quantities of materials to TPI.

13. The Supplier Agreement contains provisions defining pricing and adjustments to the same. [E.g. Section 5]

14. The Supplier Agreement specifically contains language requiring the parties to review the exchange rate quarterly based on the average change in the past 3 months to be found at www.oanda.com and the schedule set forth in the Supplier Agreement. [Supplier Agreement, Sections 5.2-5.5]

15. Following the entry of the Supplier Agreement, the exchange rate impacted the price of raw materials.

16. Raw materials purchased from the SGL manufacturing facility in the United States (Moses Lake) are purchased in dollars and sold to TPI Turkey in euros.

17. Because raw material equates to 82% of end-product selling price, a crash in the U.S. dollar-euro foreign exchange rate resulted in a massive negative impact to Kümpers' revenues.

18. TPI refused to honor the price adjustment called for in the Supplier Agreement.

19. The Supplier Agreement also contains a cost-based adjustment on freight. [Supplier Agreement, Sections 5.4]

20. Section 5.4 of the Supplier Agreement allows for price adjustments to be made by Kümpers for excess variations +/- €500 in the costs of freight.

21. Following the entering of the Supplier Agreement, a cost-based adjustment on freight became necessary.

22. Section 5.4 of the Supplier Agreement was triggered due to increased transportation costs between the SGL facility in the U.S. and Germany.

23. TPI refused to honor the cost-based adjustment on freight called for in the Supplier Agreement in accordance with Section 5.4.

24. After the Supplier Agreement with TPI was entered, Kümpers experienced the effects of hyper-inflation energy costs in Germany, which effects were caused by the unforeseen Ukraine war.

25. TPI agreed within the Supplier Agreement to a fixed volume of 700 metric tons of materials. [Supplier Agreement, Section 2 ("Purchase & Supply Obligations")]

26. TPI was informed that in order to make the above commitment, Kümpers had to provide its supplier, SGL, a commitment to buy 300 metric tons of materials between October 2022 and March 2023.

8649623v1(71879.1)

27. When TPI terminated the Supplier Agreement in late 2022 it had failed to take the minimum contract requirement of 700 metric tons.

28. Because of TPI's failure to purchase the required minimum of 700 metric tons, Kümpers was left with 179 metric tons of materials, which materials had a selling price of €23.19 per Kg.

29. At or about the end of April 2022, TPI emailed Kümpers committing to take 55% of TPI's product requirements from Kümpers, which equated to 500 metric tons in 2023/2024.

30. On the basis of the written commitments from TPI, Kümpers committed to a lease extension extending to December 31, 2023, which lease extension cost Kümpers in excess of € 300,000.

31. Based upon the TPI commitment to a volume of 55%, Kümpers confirmed volumes and prices with the raw material supplier SGL through November 15, 2022.

32. The 55% volume commitment from TPI is binding on TPI.

33. TPI made no warranty claims or claims of defect to Kümpers about any of the products or materials received form Kümpers.

34. All shipments from Kümpers to TPI were made on time.

35. Kümpers fully complied with the terms of the Agreement and amendments to the same and met all its obligations to TPI.

36. Kümpers remained ready, willing and able to perform its obligations under the Supplier Agreement.

37. TPI had no grounds for Termination for Cause of any of the agreements with Kümpers.

38. The Termination for Convenience language in Section U(1) of the Master Agreement did not apply to the Supplier Agreement.

39. On or about December 23, 2022 TPI e-mailed a letter to Kümpers claiming to exercise a Termination for Convenience provision under the Master Agreement.

40. Termination for Convenience under the Master Agreement was not available to TPI to terminate the Supplier Agreement, but even if the Master Agreement's Termination for Convenience provision had been applicable in this situation, TPI failed to comply with the formal Notice requirements in Section V of the Master Agreement, thereby invalidating and rendering ineffective TPI's attempt to terminate the Supplier Agreement.

41. By refusing to honor the terms and conditions of the Supplier Agreement, and anticipatorily and materially breaching the Supplier Agreement on December 23, 2022 by making clear it did not intend to perform through the remainder of the term, TPI caused Kümpers damage in an amount to be proven at trial but currently calculated to be in excess of € 15,000,000.

**COUNT ONE**

**(Declaratory Judgment)**

42. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

43. Pursuant to 28 U.S.C. §2201, after reasonable notice and hearing, a person interested in a contract, or whose rights, status, or legal relations are affected by a contract, may have the Court determine, among other things, any question of construction or validity under the contract and obtain a declaration of rights, status or other legal relations thereunder.

44. Kümpers and TPI entered into the Supplier Agreement effective January 1, 2022.

45. On December 22, 2022, TPI issued a letter to Kümpers indicating it was terminating the Supplier Agreement.

46. The improper termination by TPI makes it clear this subject matter is ripe as there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, and that declaratory action will serve a useful purpose in clarifying the legal relations at issue.

5

47. Pursuant to the Supplier Agreement, TPI was required to honor the Agreement through March 31, 2023.

48. As a direct and proximate result of all of the above factual allegations, Kümpers is entitled to a declaratory judgment in its favor stating, at a minimum, the following:

(i) The Termination for Convenience language in Section U(1) of the Master Agreement did not apply to the Supplier Agreement. Alternatively, the Termination for Convenience language in the Master Agreement is subject to the duty of good faith and fair dealing and the attempt by TPI to rely upon such a provision under the facts and circumstances in question was a violation of its implied duty.

(ii) The Supplier Agreement remains in full force and effect and is enforceable by Kümpers.

(iii) TPI's attempt to terminate the Supplier Agreement was invalid and ineffective because it failed to comply with the Notice requirements and because of the (i) herein.

(iv) Both parties remain obligated to perform under the Supplier Agreement.

(v) Kümpers was entitled to invoke and demand compliance with terms and conditions of the Supplier Agreement when it did and insist that TPI pay the increased amounts owed thereunder.

49. As a direct and proximate result of the aforementioned, Kümpers is entitled to its attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01.

WHEREFORE, Plaintiff, Kümpers, hereby demands judgment in its favor and against Defendant TPI declaring as follows:

(a) the statements set forth in paragraph 49, subparts (1) – (vii)

(b) attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01 for at least $15,000 if the Defendant defaults; and

(c) such further relief as the Court may deem equitable and just.

6

**COUNT TWO**

**(Specific Performance)**

50. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

51. Kümpers and TPI entered into the Supplier Agreement for the sale/purchase of certain products.

52. Pursuant to the terms of the Supplier Agreement, TPI was required to continue to buy products during the term of that contract.

53. The terms of the Agreement are certain and fair.

54. Kümpers has not acted inequitably and has fully performed its obligations as required by the Supplier Agreement.

55. Requiring TPI to perform under the terms of the Agreement will not inflict a hardship upon TPI.

56. Specific performance may be decreed where the goods are unique and/or the contract involves a particular or peculiarly available source.

57. As a direct and proximate result of the aforementioned, Kümpers is entitled to specific performance requiring TPI to reinstate the Supplier Agreement, for TPI to resume the purchase of products identified in the Supplier Agreement that TPI agreed to purchase, and to promptly and fully compensate Kümpers under the terms of the Supplier Agreement.

58. As a direct and proximate result of the aforementioned, Kümpers is entitled to its attorneys' fees and costs pursuant to A.R.S. §§12-341 and A.R.S. §12-341.01.

WHEREFORE, Plaintiff Kümpers, hereby demands judgment in its favor and against Defendant, TPI for:

(a) specific performance/injunctive relief requiring TPI to reinstate the Supplier Agreement, to resume purchases as required by the Supplier Agreement, and to fully perform under the contract for the remainder of the contractual term;

8649623v1(71879.1)

(b) attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01 for at least $15,000 if the Defendant defaults; and

(c) such further relief as the Court may deem equitable and just.

## COUNT THREE

### (Breach of Contract)

59. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

60. Under the Supplier Agreement, TPI was required to purchase product from Kümpers for the full term of the Agreement.

61. Kümpers fully complied with its obligations under the Agreement.

62. TPI terminated the Supplier Agreement on December 22, 2022 in violation of the terms of the Agreement.

63. TPI's termination of Supplier Agreement was not in accordance with the express or implied terms of the Agreement.

64. As a direct and proximate result of the aforementioned, TPI has materially breached its obligations pursuant to the Agreement to the damage of Kümpers.

65. As a direct and proximate result of the aforementioned, TPI is in breach of contract and liable to Kümpers for damages that have resulted naturally and directly from the breach and consequential damages, including, but not limited to lost past and present profits, lost future profits for term of the Supplier Agreement, loss of business relationships, severe and irreparable damage to Kümpers's reputation, and expenses incurred for which Kümpers has not been fully reimbursed as a result of the breach, and attorneys' fees and costs.

66. As a direct and proximate result of the aforementioned, Kümpers is entitled to its attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01.

WHEREFORE, Plaintiff Kümpers hereby demands judgment in its favor and against Defendant, TPI for:

(a) breach of contract;

8

(b) compensatory, consequential, and incidental damages in an amount to be proven at trial;

(c) attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01 for at least $15,000 if the Defendant defaults; and

(d) such further relief as the Court may deem equitable and just.

## COUNT FOUR

### (Breach of the Covenant of Good Faith and Fair Dealing)

67. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

68. Kümpers and TPI entered into a valid and binding contract.

69. In Arizona, all contracts contain an implied provision of good faith and fair dealing.

70. The covenant of good faith and fair dealing requires more than honesty and prohibits a party from doing anything that will injure the right of the other party to receive the benefits of their agreement.

71. A party breaches the implied duty of good faith and fair dealing by, among other things, evading the spirit of the bargain, willfully rendering imperfect performance, abusing a power to specify terms, and interfering with or failing to cooperate in the other party's performance.

72. TPI materially breached the implied covenant of good faith and fair dealing.

73. Upon information and belief, TPI materially breached the implied covenant of good faith and fair dealing by doing, among other things, evading the spirit of the bargain with Kümpers, interfering with and failing to cooperate in the other party's performance, trying to invoke the termination for convenience when it knew it did not apply to the Supplier Agreement and/or only shortly after Kümpers and TPI agreed to an extension of the terms and conditions that TPI knew obligated Kümpers to extend a lease and commit to other obligations with its supplier.

8649623v1(71879.1)

74. Kümpers has been damaged as a result of TPI's material breach of implied covenant of good faith and fair dealing.

75. Kümpers has sustained damages in an amount to be proven at trial as a result of TPI's material breach of the covenant of good faith and fair dealing.

76. TPI is liable for Kümpers' damages that have resulted naturally and directly from the breach and consequential damages, including, but not limited to lost past and present profits, lost future profits for term of the Supplier Agreement, loss of business relationships, severe and irreparable damage to Kümpers' reputation, and expenses incurred for which Kümpers has not been fully reimbursed as a result of the breach, and attorneys' fees and costs.

Wherefore, Kümpers seeks a judgment in its favor and against TPI as follows:

(a) For breach of the covenant of good faith and fair dealing;

(b) For compensatory, consequential, and incidental damages in an amount to be proven at trial;

(c) For an award of attorneys' fees and taxable costs pursuant to A.R.S. §12-341 and § 12-341.01 of at least $15,000 if Defendant defaults;

(d) For post-judgment interest at the legal rate; and

(e) For such other and further relief as the court deems just and proper.

## COUNT FIVE

### (Promissory Estoppel)

77. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

78. TPI made promises to Kümpers to purchase a minimum of 700 metric tons of materials from Kümpers and TPI promised that 55% of TPI's product requirements would be fulfilled through Kümpers.

79. TPI made promises to Kümpers that TPI knew at the time of making those promises it would induce Kümpers to incur costs (e.g. signing a lease and committing to purchase certain minimums from its supplier SGL), pass up other opportunities, and induce

Kümpers to perform work with and sell product to TPI in reasonable reliance upon TPI's promises.

80. At the time TPI made its promises it knew its promises induced Kümpers to incur costs, make financial commitments, and perform work with and for TPI.

81. TPI knew Kümpers was performing work in reasonable reliance upon TPI's promises to perform.

82. Kümpers fully performed the duties, obligations and work requested in reasonable reliance upon TPI's promises to it.

83. Kümpers' reliance upon the promises from TPI was reasonable and Kümpers was not paid the full value of the fully performed services or compensated for the lost business opportunities suffered for performing work for TPI instead of earning monies from other work available to it that would have paid them equal if not more than TPI promised it.

84. Kümpers has been damaged in an amount to be proven at trial.

85. TPI is liable for all of the damage sustained by Kümpers.

Wherefore, Kümpers seeks a judgment in its favor and against TPI as follows:

(a) Awarding damages;

(b) Awarding reasonable attorneys' fees and taxable costs pursuant to any and all legal authority, including without limitation A.R.S. § 12-341 and § 12-341.01, of at least $15,000 if the Defendant defaults;

(c) Awarding pre-judgment interest at the maximum legal rate of interest per annum pursuant to A.R.S. § 44-1201; and

(d) Awarding such other and further relief as the court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues triable by a jury.

//

//

//

11

DATED this 1st day of February, 2023.

        JENNINGS, STROUSS & SALMON, P.L.C.

        By /s/ *Eric D. Gere*
           Eric D. Gere
           Garrett J. Olexa
           Dina G. Aouad
           One East Washington Street, Suite 1900
           Phoenix, Arizona 85004-2554
           *Attorneys for Plaintiff*

8649623v1(71879.1)